UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEVEN W. MITCHELL, § § § § § § § § § § § § § § | |
| *Plaintiff*, | |
| v. | |
| DALLAS COUNTY TEXAS; MARIAN BROWN; ANTOINE DARIUS; MANU MATHEW; MARCOS RODRIGUEZ; CLAXTON WRIGHT; and OSCAR CARRASCO, III. | Civil Action No. 3:19-CV-00744-X |
| *Defendants*. | |

## MEMORANDUM OPINION AND ORDER

This case involves a civil rights claim by a former pretrial detainee for an alleged assault by five jail guards. Steven Mitchell sued the five previously unknown guards as well as Dallas County and Sheriff Marian Brown for claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1981. Before the identities of the guards were known, the Court dismissed the section 1981 claims against Sheriff Brown and Dallas County with prejudice and dismissed the section 1983 claims against the Sheriff and County without prejudice, giving Mitchell an opportunity to replead. The Court also ordered Mitchell to engage in discovery to uncover the identities of the Doe defendants and include them in the amended complaint. After Mitchell filed his amended complaint, Dallas County and Sheriff Brown filed a joint Motion to Dismiss [Doc. No. 25], as did the five guards [Doc. No. 32]. For the reasons below, the Court **GRANTS** the motions to dismiss.

## I. Factual Background

Mitchell was a pretrial detainee in the Dallas County Jail in March 2017. Mitchell alleges that he was alone in his cell when five guards entered the cell, ordered him to step outside, pushed him back into the unit, and then assaulted him. The assault inflicted injuries to his eyes, nose, face, and knees. Jail staff transported Mitchell to Parkland Hospital for extensive treatment. Mitchell claims he still lacks complete vision.

Mitchell's complaint includes causes of action under section 1981 and 1983 against the county, Sheriff Brown in her official capacity, and the five guards. Mitchell claims the defendants violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments by using excessive force, retaliating against him for protected speech, and discriminating against him because of his race.[1]

## II. Legal Standards

Under Rule 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[2] To survive a motion to dismiss, the claimant must allege enough facts "to state a claim to relief that is plausible on its face."[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1] *See* Doc. No. 22 at 2.

[2] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2020).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

inference that the defendant is liable for the misconduct alleged."[4]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[5]  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[6]

### III. Analysis

#### A. Claims against the Guards

Congress enacted 42 U.S.C. § 1981 to ensure that:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."[7]

42 U.S.C. § 1983 provides a private cause of action to recover damages inflicted by a state official's violation of constitutional rights or federal law.  And it is the exclusive remedy for a state actor's violation of section 1981.[8]  Section 1983 itself does not contain a statute of limitations; instead the general statute of limitations governing

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[6] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

[7] 42 U.S.C § 1981(a).

[8] *Jones v. Tex. Juvenile Justice Dep't*, 698 F. App'x 215, 216 (5th Cir. 2017) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)).

personal injuries in the forum state determines the limitations period.[9] In Texas, the applicable limitations period is two years.[10] In applying the relevant statute of limitations for a section 1983 or section 1981 claim, federal law controls when the claim accrues.[11] "[A] § 1983 action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of the action."[12]

Federal Rule of Civil Procedure 15(c) allows a plaintiff who files suit within the limitations period to amend the complaint after the limitations expires in order to substitute a correct party for an incorrect party.[13] The Fifth Circuit, however, generally does not allow amendments that substitute named defendants for fictious ones to "relate back" to the timely complaint under Rule 15(c).[14]

Because state law provides the statute of limitations in a section 1983 claim, state law also governs whether the limitations period tolls.[15] "Texas courts sparingly apply equitable tolling and look . . . to whether a plaintiff diligently pursued his

---

[9] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).

[10] TEX. CIV. PRAC. & REM. CODE § 16.003(a). Section 1981 also lacks a statute of limitations and in Texas again borrows the two-year personal injury limitations period. *See Teamah v. Applied Materials, Inc.*, 715 F. App'x 343, 346 (5th Cir. 2017) ("where a section 1981 claim is brought in Texas, the two year statute of limitations for personal injury actions in Texas controls").

[11] *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993).

[12] *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999) (quotation marks omitted).

[13] FED. R. CIV. P. 15(c).

[14] *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998).

[15] *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998).

rights; litigants may not use the doctrine to avoid the consequences of their negligence."[16] As a result, "[f]ederal courts also apply the doctrine sparingly."[17]

The jail guards argue that Mitchell fails to state claim against them because Mitchell filed the amended complaint identifying them in this lawsuit after the statute of limitations for section 1983 and 1981 claims lapsed. Mitchell does not dispute that he filed the amended complaint after the limitations period or that the Fifth Circuit's precedent does not allow the amendment to "relate back" under Rule 15(c) in this circumstance. Nonetheless, Mitchell urges the Court to apply Texas's equitable tolling doctrine to consider the amendment timely.

The touchstone for equitable tolling is whether Mitchell diligently pursued his rights in seeking to uncover the true names of the guards before the limitations period ended. The key fact in this case is that Mitchell waited until the last day of the limitations period to file his original complaint, which named the guards using fictious "Doe" pseudonyms.[18] Further, Mitchell did not serve his complaint on Dallas County and Sheriff Brown, the two parties who could provide the guards' true names, until more than two months—and one court order—later.[19] And even after proper service, Mitchell still did not file any motions or take any other action to uncover the

---

[16] *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (per curiam) (quotation marks omitted).

[17] *Id.* (*citing Wallace v. Kato*, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.")).

[18] Doc. No. 1.

[19] Doc. No. 5.

guard's true names. Rather, it was the Court that ordered Mitchell to engage in this discovery, almost a year after he filed the original complaint.[20]

Mitchell does not explain how these facts demonstrate diligence under the circumstances, nor does he introduce any other facts or actions that would show he diligently pursued his rights. Instead, Mitchell argues merely that it would be inequitable to apply the statute of limitations in this case. Mitchell cites to *Green v. Doe* in support.[21] In *Green*, the plaintiff filed his complaint naming a "Doe" defendant eleven months before the statute of limitations lapsed and filed several motions to discover the jail guard's name within the limitations period.[22] But the discovery process was delayed by erroneous denial of his motions, dismissal of the case that was an abuse of discretion, the subsequent appeal and remand by the Fifth Circuit, and the state's difficulty identifying the guard.[23] After the district judge denied the plaintiff's leave to amend his complaint to replace the "Doe" defendant, the Fifth Circuit determined that equitably tolling the statute of limitations was appropriate because the plaintiff did everything he could to discover the guard's true name within the limitations period and was thwarted only by circumstances outside his control.[24]

Mitchell argues that his efforts to discover the guards' true names were similarly delayed by circumstances outside his control, specifically a judge's recusal

---

[20] Doc. No. 21.

[21] 260 F. App'x 717 (5th Cir. 2007) (per curiam).

[22] *Id.* at 718.

[23] *Id.*

[24] *Id.* at 719–20.

6

in the case and the motion to dismiss filed by Dallas County and Sheriff Brown before discovery.  But the circumstances Mitchell identifies are nothing like the facts of *Green*.  Even if the judge's recusal or the motion to dismiss could have unilaterally prevented an effort to discover the jail guards' names, Mitchell would need to demonstrate that he made some effort towards discovery within the limitations period.[25]  Mitchell did not make any such efforts and his decision to wait until the final day of the limitations period to file his complaint likely precluded any ability to do so before the statute lapsed.  Unlike the plaintiff in *Green*, who filed his complaint eleven months early and filed multiple discovery motions within the limitations period, Mitchell failed to establish a basis for equitable tolling here.

Because the statute of limitations lapsed before the jail guards were named in this lawsuit and no rule of law applies to make the amendment timely, the Court **GRANTS** the motion to dismiss.

### B. Dallas County and Sheriff Brown

Mitchell's claims for section 1983 municipal liability against Dallas County and Sheriff Brown are predicated on an unconstitutional custom or practice, failure to train and supervise the jail staff, and unconstitutionally understaffing the jail.  The defendants argue Mitchell failed to state a claim under each theory.  The Court will evaluate these in turn.

---

[25] The Court also disagrees that these events could have prevented discovery.  The judge's recusal occurred within days after Mitchell filed his complaint and the case was immediately reassigned.  Further, Mitchell did not explain how, nor is the Court aware of a reason why, a pending motion to dismiss would prevent even limited discovery to discover the guards' true names.

*1. Custom or Practice*

Governmental liability for the actions of employees under section 1983 attaches where the "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[26] An "official policy" is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[27]

When relying on prior unconstitutional incidents to show a widespread practice, the incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[28]

The Court previously determined that Mitchell's original complaint lacked an identifiable custom or policy, and dismissed the claim without prejudice.[29] In his amended complaint, Mitchell alleges that Dallas County and the Sheriff "created and

---

[26] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).

[27] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam).

[28] *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009).

[29] Doc. No. 22 at 5.

8

tolerated an atmosphere of lawlessness" and "were aware of . . . similarly unlawful conduct in the past."[30] But Mitchell does not identify any specific incidents that demonstrate unlawful conduct or lawlessness in the past.[31] These vague assertions of an "atmosphere of lawlessness" and the existence of "similarly situated unlawful conduct in the past" are not sufficient to state a plausible claim.[32] Facts like names, dates, specific acts, and official determinations that conduct was unconstitutional are needed to raise the right to relief above a speculative level. Therefore, Mitchell failed to adequately plead a custom of unconstitutional conduct.

## *2. Failure to Train or Supervise*

Municipalities and supervisors may be held liable under section 1983 for a failure to train or supervise their employees.[33] When a plaintiff alleges a failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[34] The Court previously determined that "Mitchell failed to plead facts showing the county and Sheriff Brown

---

[30] Doc. No. 23 at 14, 15.

[31] *See* Doc. No. 22 at 6 ("To survive a motion to dismiss, Mitchell must adequately allege specific facts regarding an official policy on training or supervision or a widespread and persistent practice on training or supervision.").

[32] *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 545.

[33] *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

[34] *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998); *see also City of Canton*, 489 U.S. at 388 ("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.").

were deliberately indifferent to a known or obvious risk that its customs would result in deprivations of specific rights."[35] Dallas County and Sheriff Brown argue that Mitchell's amended complaint again fails to state a claim by inadequately pleading the deliberate indifference.

The alleged failure to train must amount to deliberate indifference to the "'known or obvious consequences' that constitutional violations would result" from the custom.[36] The deliberate indifference standard "requires a plaintiff to show that '1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur.'"[37] "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[38] The inquiry focuses on whether the defendant is "on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights."[39] Therefore "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference."[40]

---

[35] Doc. No. 22 at 6.

[36] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

[37] *Hartzog v. Hackett*, 711 F. App'x 235, 235–36 (5th Cir. 2018) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 458–59 (5th Cir. 2001)).

[38] *Bd. of the Cty. Commissioners of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 410 (1997).

[39] *Connick*, 563 U.S. at 61.

[40] *Id.* at 62.

Here, Mitchell only alleged that Dallas County and Sheriff Brown were "aware of []violent beatings of inmates and failed to train their Sheriffs in De-Escalation Training-Use of force."[41] Mitchell alleges no specific "pattern of similar constitutional violations by untrained employees" or other facts that might demonstrate the alleged awareness. As such, Mitchell's allegations are merely conclusory and insufficient to "raise a right to relief above the speculative level."[42] Therefore, Mitchell failed to adequately plead a section 1983 claim for a failure to properly train employees.

### 3. Inadequate Staffing

Mitchell's amended complaint also appears to allege that Dallas County and Sheriff Brown violated his rights by unconstitutionally understaffing the jail. However, this theory of liability was not present in his original complaint. The Court granted Mitchell leave to file an amended complaint for the purposes of curing pleading deficiencies and naming the Doe defendants, not to add new theories of liability.[43] Regardless, Mitchell failed to state a claim for unconstitutional understaffing pursuant to section 1983.

Courts have characterized an understaffing claim under an episodic act-or-omission theory of liability.[44] An episodic act-or-omission theory requires the plaintiff

---

[41] Doc. No. 23 at 15.

[42] *Twombly*, 550 U.S. at 555.

[43] *See* Doc. No. 22 at 8 ("For these reasons, the Court GRANTS the county and Sheriff Brown's motion to dismiss, DISMISSES WITH PREJUDICE Mitchell's section 1981 claim against the county and Sheriff Brown, DISMISSES Mitchell's section 1983 claim against the county and Sheriff Brown, and grants Mitchell leave to amend his pleading. The 1983 claim pleading deficiencies must be cured in the amended complaint identifying the John Doe defendants, which must be filed by July 9, 2020.").

[44] *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) ("where the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case"); *Shepard v. Hansford Cty.*, 110 F.Supp.3d 696, 712 (N.D. Tex. 2015) (Robinson,

to establish that the defendant violated the plaintiff's constitutional rights with deliberate indifference.[45]

Setting aside the issue of whether Mitchell adequately pled that the jail was unconstitutionally understaffed, Mitchell failed to plausibly plead deliberate indifference.[46] Mitchell alleged that Dallas County and Sheriff Brown "were aware of the need for adequate and/or additional staffs for the Dallas County Jail" and "deliberately showed indifferences to the constitutional rights of the Plaintiff and other similar situated persons by failing to adequately provide adequate staffing for the jail."[47] But the complaint lacks any factual allegations that demonstrate actual or constructive notice of the alleged omission.[48] Consequently, Mitchell's pleadings contain only threadbare conclusory allegations on this claim and are insufficient to plausibly establish a right to relief.

In sum, Mitchell failed to adequately plead a section 1983 claim under an unconstitutional policy, failure to train/supervise, or episodic act-or-omission theory of liability. As a result, Mitchell failed to state a section 1983 claim against Dallas County or Sheriff Brown. Accordingly, the Court **GRANTS** the motion to dismiss.

---

J.) (noting that the Fifth Circuit requires subjective deliberate indifference in episodic act claims of pre-trial detainees).

[45] *Scott*, 114 F.3d at 54.

[46] Mitchell did not address this aspect of his section 1983 claims in his response to the motion to dismiss.

[47] Doc. No. 23 at 15–16.

[48] *See Connick*, 563 U.S. at 61.

## IV. Conclusion

For the forgoing reasons, Court **GRANTS** the motions to dismiss. Mitchell's claims against all defendants are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** this 22nd day of January, 2021.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE